## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ISIAH CRAYTON, III**                                 **CIVIL ACTION**

**versus**                                                      **NO. 02-2162**

**BURL CAIN, WARDEN**                          **SECTION: "N" (3)**

## REPORT AND RECOMMENDATION

On July 1, 2002, petitioner filed a federal application for *habeas corpus* relief.[1]  On March 27, 2003, the undersigned issued a report recommending that the application be dismissed as untimely filed.[2]   On September 25, 2006, the United States District Judge adopted that recommendation and dismissed the petition with prejudice.[3]  On June 28, 2007, the United States Fifth Circuit Court of Appeals denied petitioner a certificate of appealability.[4]  The United States Supreme Court then denied his related petition for a writ of certiorari on January 14, 2008.[5]

---

[1] Rec. Doc. 2.

[2] Rec. Doc. 11.

[3] Rec. Docs. 17 and 18.

[4] Rec. Doc. 26.

[5] Rec. Doc. 27.

On December 20, 2012, petitioner filed a motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[6]  On May 29, 2013, that motion was referred to the undersigned for a report and recommendation.[7]  For the following reasons, it is hereby recommended that the motion be **DENIED**.

Rule 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b).

Although the reasoning of petitioner's motion is convoluted, his underlying premise is relatively simple:  based on improprieties in his state court post-conviction proceedings which first

---

[6] Rec. Doc. 29.

[7] Rec. Doc. 31.

came to light in 2008, he should be relieved of this Court's 2006 judgment dismissing his 2002 federal *habeas corpus* application as untimely.  Specifically, he refers to the improprieties which were exposed after the suicide of Jerrold Peterson, the former Central Staff Director of the Louisiana Fifth Circuit Court of Appeal.  As the United States Fifth Circuit Court of Appeals has concisely observed:

> Before his death, Peterson wrote a letter to the judges of the Louisiana Fifth Circuit where he accused them of instituting a policy to circumvent Louisiana's constitutional requirement of three judge panels with respect to pro se prisoner post-conviction writs by having such filings submitted to one judge or a staff member who would issue a ruling concerning the writ application without review by a three judge panel.  See La. Const. art. V (each state Court of Appeal "shall sit in panels of at least three judges selected according to rules adopted by the court.").
>
> After Peterson's allegations were made public, many state prisoners claimed that their rights had been violated by the court's procedures and sought relief from the Louisiana Supreme Court.  In response, the Louisiana Fifth Circuit Court of Appeal unanimously adopted an en banc resolution where it asked the Louisiana Supreme Court to consider remanding those cases to it with direction that they be assigned to random three judge panels.  State v. Cordero, 993 So.2d 203, 206 (La. 2008).  In its decision, on a writ application filed by a prisoner affected by the alleged constitutional violations of the Louisiana Fifth Circuit Court of Appeal, the Louisiana Supreme Court adopted the court of appeal's resolution.  Cordero, 993 So.2d at 205.

Severin v. Parish of Jefferson, 357 Fed. App'x 601, 603 (5th Cir. 2009).

Petitioner was one of the many prisoners impacted by the Cordero decision.  He filed a petition seeking review by the Louisiana Supreme Court, and, on April 24, 2009, that application was transferred to the Louisiana Fifth Circuit Court of Appeal for consideration pursuant to Cordero. State *ex rel.* Crayton v. State, 7 So.3d 1212 (La. 2009).  On May 31, 2012, the Court of Appeal

issued a detailed opinion noting that petitioner was entitled to reconsideration of three of its prior rulings under Cordero. However, on such reconsideration, the Court of Appeal found that relief was not warranted, holding:

> In sum, we have reviewed our rulings on all of relator's *pro se* writ applications filed with this Court between February 8, 1994 and May 21, 2007 including:  96-KH-741, 00-KH-1440, and 00-KH-1633. Based on our current analysis, we conclude that there was no error in the prior rulings of this Court.  Accordingly, we remain with this Court's original dispositions in relator's three previous writ applications and deny the relief requested in the instant Cordero writ application.

State *ex rel.* Crayton v. State, No. 09-WR-532, pp. 5-6 (La. App. 5th Cir. May 31, 2012).  Without assigning additional reasons, the Louisiana Supreme Court likewise denied relief on November 2, 2012.  State *ex rel.* Crayton v. State, 99 So.3d 667 (La. 2012).  Petitioner then filed the instant Rule 60(b) motion on December 20, 2012.

In its opposition, the state argues that petitioner's Rule 60(b) motion is untimely,[8] a contention which petitioner vigorously disputes.  However, this Court can pretermit a determination on that issue because petitioner's Rule 60(b) motion has no underlying merit *even if* it is timely.

---

[8] The state also argues that, to the extent that petitioner is claiming that he is entitled to federal *habeas corpus* relief based on Cordero, that is not a cognizable claim.  This Court does not read petitioner's motion in that way.  Rather than claiming that Cordero affords him a new, independent basis for relief under 28 U.S.C. § 2254, it appears that he is arguing only that Cordero affords him a basis for relief under Rule 60(b).  However, the state's underlying contention is correct.  The irregularities in the Louisiana Fifth Circuit Court of Appeal's review of post-conviction writs and the resulting Cordero review clearly does not provide a cognizable ground for relief under § 2254. Lane v. Rogers, Civ. Action No. 12-340, 2012 WL 3160034, at *5 (E.D. La. June 21, 2012), adopted, 2012 WL 3159656 (E.D. La. Aug. 2, 2012); Wilford v. Cain, Civ. Action No. 10-2163, 2011 WL 6819035 (E.D. La. Dec. 28, 2011).

Petitioner should not be granted relief under Rule 60(b) unless this Court's 2006 judgment wrongly dismissed his 2002 *habeas corpus* application on the grounds that it was untimely filed. For the following reasons, it is clear that the 2002 application was in fact untimely.

For the reasons explained in the original Report and Recommendation issued in this case, petitioner's federal statute of limitations for seeking *habeas corpus* relief commenced on April 24, 1996, and expired one year later on April 24, 1997, unless that deadline was extended through tolling. Regarding tolling, the AEDPA expressly provides: "The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added).

While petitioner did have *one* state application pending during the applicable one-year period, i.e. a state post-conviction application filed on May 8, 1996, it was unclear whether that application was "properly filed." As noted in the original Report and Recommendation, that application was ultimately denied by the state courts as untimely filed. At the time the Report and Recommendation was issued, the untimely application could nevertheless still be considered "properly filed" under Smith v. Ward, 209 F.3d 383 (5th Cir. 2000). However, as also noted in Report and Recommendation, the continued viability of Smith was in doubt at that time in light of Carey v. Saffold, 536 U.S. 214 (2002). Because the United States Fifth Circuit Court of Appeal had not addressed the issue of whether Smith remained good law in light of Saffold, the undersigned, in an abundance of caution, simply noted that petitioner's application would be untimely *even if* Smith applied and tolling was granted based on the 1996 application.

While that conclusion was and remains accurate, it is now clear that petitioner was not in fact entitled to *any* tolling.  In 2005, the United States Supreme Court stated:  "What we intimated in Saffold we now hold:  When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."  Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) (quotation marks and brackets omitted).  The Supreme Court therefore held:  "[T]ime limits, no matter their form, are 'filing' conditions.  Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."  Id. at 417.  In light of that definitive statement in Pace, the United States Fifth Circuit Court of Appeals subsequently held that Smith v. Ward, 209 F.3d 383 (5th Cir. 2000), had in fact been abrogated.  Wardlaw v. Cain, 541 F.3d 275, 279 (5th Cir. 2008).

Accordingly, not only was petitioner's 2002 federal application untimely for the reasons noted in the original Report and Recommendation, it is now clear that petitioner was not entitled to the benefit of the doubt afforded him therein; as a result, his federal application was even more untimely than originally noted, because his federal limitations period actually expired on April 24, 1997, long before his federal application was filed on July 1, 2002.

The gist of petitioner's argument to contrary is that his 2002 federal application was somehow rendered timely by the subsequent discovery of the improprieties which resulted in the Cordero reconsideration of the Louisiana Fifth Circuit Court of Appeal's decision in case number 96-KH-741, the judgment holding that his 1996 state post-conviction application was untimely. That argument is unavailing for three reasons.

First, contrary to petitioner's contention, the original decision in case number 96-KH-741 was *not* vacated; the Louisiana Supreme Court ordered only that it be reconsidered in light of the irregularities which had come to light.  See State *ex rel.* Crayton v. State, 7 So.3d 1212 (La. 2009); see also Williams v. Cain, Civ. Action No. 04-2187, 2011 WL 2417108, at *1 n.16 (E.D. La. June 13, 2011).

Second, because petitioner's Cordero reconsideration was sought and provided long after his federal limitations period had already expired, it simply is not relevant.  See, e.g., Thomas v. Tanner, 2011 WL 4344605, at *4-6 (E.D. La. Aug. 23, 2011), adopted, 2011 WL 4345076 (E.D. La. Sept. 15, 2011).

Third, in any event, on reconsideration during the Cordero review, the Court of Appeal *again* held that the 1996 application was *untimely*, State *ex rel.* Crayton v. State, No. 09-WR-532, pp. 5-6 (La. App. 5th Cir. May 31, 2012), as did the Louisiana Supreme Court,  State *ex rel.* Crayton v. State, 99 So.3d 667 (La. 2012).[9]  In that the state courts again conclusively held that the 1996 application was untimely filed under state law, neither that 1996 application nor any of the subsequent proceedings relating to that application tolled the federal statute of limitations, because the application was never "properly filed" as required for tolling under § 2244(d)(2).  See Pace, 544 U.S. at 417.  In light of that fact, and because petitioner had no other state applications pending at

---

[9] Because the Louisiana Supreme Court assigned no reasons for its decision, it is presumed to have denied relief on the same basis as the Court of Appeal.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

any time from April 24, 1996, through April 24, 1997, he simply is not entitled to *any* statutory tolling.

In the original Report and Recommendation, the undersigned additionally noted that petitioner had not established that equitable tolling was warranted.  That likewise has not changed. A petitioner bears the burden of proof to establish entitlement to equitable tolling.  <u>Alexander v. Cockrell</u>, 294 F.3d 626, 629 (5th Cir. 2002).  In the Report and Recommendation, the undersigned noted that petitioner had brought forth no evidence demonstrating that he was entitled to such tolling.  To the extent that he is now arguing that the initial improper review by the Louisiana Fifth Court of Appeal and the resulting <u>Cordero</u> reconsideration should serve as a basis for equitable tolling, that argument has been repeatedly rejected by the federal courts.  <u>See, e.g.</u>, <u>Thomas v. Tanner</u>, 2011 WL 4344605, at *4-6 (E.D. La. Aug. 23, 2011), <u>adopted</u>, 2011 WL 4345076 (E.D. La. Sept. 15, 2011); <u>see also</u> <u>Lane v. Rogers</u>, Civ. Action No. 12-340, 2012 WL 3160034, at *4 (E.D. La. June 21, 2012), <u>adopted</u>, 2012 WL 3159656 (E.D. La. Aug. 2, 2012); <u>Nellon v. Cain</u>, 2012 WL 1142539, at *5 (E.D. La. Jan. 25, 2012), <u>adopted</u>, 2012 WL 1089232 (E.D. La. Mar. 30, 2012).

Lastly, out of an abundance of caution, the undersigned makes one other observation regarding the issue of the timeliness of the 2002 federal application.  In the original Report and Recommendation, the undersigned noted that petitioner claimed that he was actually innocent but that, under Circuit precedent, claims of actual innocence had no bearing on whether a federal petition was timely filed.  During the long passage of time since that Report and Recommendation was issued, the law has changed.  The United States Supreme Court recently held:  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the

impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations."

McQuiggin v. Perkins, 133 S.Ct. 1924, 1928 (2013).  That said, the Supreme Court continued:  "We caution, however, that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

      For the following reasons, it is evident that this is not one of those rare cases.  Here, petitioner was convicted of aggravated rape.[10]  As petitioner conceded in his memorandum in

_____

[10] On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

      On the morning of February 10, 1986, victim [M.T.], who was residing with her niece, [Y.T.], and her niece's four children in their apartment in Marerro, rose from her bed to open her bedroom door. She was startled to see a man crouched beside her bed.  When she ordered him out of her room, he told her to "shut up" and say nothing. She started to call out to her niece for help, but as she opened her mouth the perpetrator displayed a kitchen knife and again told her to be silent, stated that he would kill her if she screamed.  Holding the knife close to her throat, he commanded that she remove her clothes. When she was naked the perpetrator removed his penis from his trousers and, still armed with the knife, compelled the victim to engage in both vaginal and anal intercourse before finally forcing oral copulation and ejaculating in her mouth.[FN 1]  After the victim expectorated the seminal discharge,[FN 2] the perpetrator placed a pillow over her face and began wiping her clean.  While he was so occupied, the victim felt around the bed for the knife.  When she found it, she threw it under the bed.  Knowing that the perpetrator was now unarmed, she pushed him away and fought her way to the hallway of the house, screaming for help.  Her niece responded to the cries.  Coming from her bedroom into the lighted hallway, she observed the perpetrator struggling with her aunt.  When the defendant noticed her presence, he struck the victim in the face,

support of his original petition, he was identified at trial as the perpetrator by both the victim and

her niece.  In his post-conviction application, he argued that he was nevertheless actually innocent

as shown by a "newly discovered" police report which memorialized witness statements that were

in some respects inconsistent with the trial testimony.  However, that evidence, while noteworthy,

was hardly game-changing.  For example, as the Louisiana Fifth Circuit Court of Appeal noted in

its <u>Cordero</u> review:

> In the report, the victim stated that she had seen the suspect the day
> before the alleged rape between 8:00 and 8:30 p.m. playing dice.
> This statement is inconsistent with the victim's trial testimony, in
> which she stated that she had seen the suspect the day before the
> alleged rape between 2:00 and 3:00 playing dice.  Relator further
> pointed out that the victim's statement in the police report is
> inconsistent with an eyewitness' testimony.  The eyewitness testified
> at trial that she had seen the suspect the day before the alleged rape
> around 8:00 p.m. at a bar.  This conflicts with the victim's prior
> statement that she had seen the suspect playing dice between 8:00
> and 8:30 p.m. the day before the alleged rape.[11]

---

hitting her in the eye, and fled the house.

> [FN 1]  The defendant was not charged with crime
> against nature.

> [FN 2] A clear liquid was collected from the floor of
> the victim's room after the incident.  Subsequent tests
> on the liquid revealed the presence of seminal fluid
> and spermatozoa.

 <u>State v. Crayton</u>, No. 87-KA-199 (La. App. 5th Cir. Aug. 26, 1987).

[11] <u>State</u> *ex rel.* <u>Crayton v. State</u>, No. 09-WR-532, pp. 3-4 (La. App. 5th Cir. May 31, 2002); Rec. Doc. 35-3, pp. 4-5.

Although that evidence could perhaps have been helpful to the defense, the Court of Appeal ultimately concluded that "the inconsistencies regarding the time at which relator was playing dice do not possess as much impeachment value as relator would have us believe."[12]  This Court agrees.

However, in any event, *even if* the evidence could support an arguably viable *Brady claim*, that alone would not suffice.  Rather, the relevant issue here is whether the evidence was of the caliber required to support an *actual innocence claim*.  It was not.  Although the defense might have been able to cast some doubt based on the seemingly inconsistent statements, a petitioner does not make a colorable "actual innocence" claim simply by showing that, in light of his new evidence, his guilt is questionable or that "reasonable doubt is conceivable."  Costagno v. Grady, Civ. Action No. 12-3333, 2013 WL 3811201 (E.D. Pa. July 23, 2013); Bastien v. Dragovitch, 128 F.Supp.2d 204, 211 (M.D. Pa. 2000).  Evidence which merely casts some doubt on a guilty verdict is therefore insufficient.  Rather, to warrant application of the "actual innocence" exception, a petitioner must bring forth colorable evidence that he did not in fact commit the crime of which he stands convicted, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."  See Schlup v. Delo, 513 U.S. 298, 324 (1995).

In summary:  To warrant an exception under McQuiggin, a petitioner must show that "in light of the new evidence, *no juror*, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 133 S.Ct. at 1928 (emphasis added).  That extremely high standard is not met where, as here, a petitioner was identified at trial by both the victim *and* an

---

[12] Crayton, No. 09-WR-532, at p. 4; Rec. Doc. 35-3, p. 5.

eyewitness, and the only "new evidence" he produces in support of his actual innocence claim is a police report which *might* have proved minimally beneficial for impeachment purposes.[13]

For the foregoing reasons, petitioner is not entitled to any statutory or equitable tolling and he falls far short of what is required to support a McQuiggin exception to the AEDPA statute of limitations. As a result, his deadline for seeking federal *habeas corpus* relief was April 24, 1997. Because his federal application was not filed until July 1, 2002, it was filed many years too late. Therefore, this Court's 2006 judgment dismissing the application as untimely was and still is correct. For that reason, there is no valid basis for granting him relief from that judgment.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's motion for relief from judgment be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[13] Another point is noteworthy. The type of evidence here, an allegedly suppressed police report which, in hindsight, could arguably have benefitted the defense by providing fodder for impeachment, is hardly uncommon. To hold that such evidence suffices under McQuiggin would, in effect, mean that the vast majority of Brady claims would simply no longer be subject the AEDPA statute of limitations. That clearly cannot be what was envisioned by the United States Supreme Court in McQuiggin, especially in that it expressly cautioned that tenable claims of actual innocence will necessarily be "rare." McQuiggin, 133 S.Ct. at 1928; see also Schlup, 513 U.S. at 324 (noting that because the high standard of evidence required "is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful").

court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[14]

      New Orleans, Louisiana, this twenty-second day of August, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[14] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.